(58 App. Div. 596.)

## RUDOLPH v. ACKERMAN.

(Supreme Court, Appellate Division, Second Department.   March 8, 1901.)

STREETS—DEDICATION—REVOCATION—SUBSEQUENT STATUTE.

A village association purchased land in the name of its president which was platted with streets 60 feet wide, and the plat, approved by the association, was filed with the county clerk. The association thereafter passed a resolution, which was never recorded, authorizing each member "to set his fence five feet on the sidewalk." Lots were deeded to the members in accordance with the plat, but fenced and used for 50 years in accordance with the resolution. *Held*, that the street was a public highway to its full 60-foot width, since the subsequent statute (Laws 1854, c. 114) making the village a separate road district, and its streets public highways 60 feet wide, was an acceptance of the dedication thereof by the grantors, which their resolution had not revoked; and hence an abutting owner, though entitled to build his fence 5 feet on the sidewalk, was not entitled

to erect a store five feet on the sidewalk, and thereby deprive plaintiff of his view of the street.

Appeal from special term, Westchester county.

Action by Henry Rudolph, Jr., against Mathilde Ackerman to restrain the continuance, and compel the removal, of an obstruction to a public highway. From a judgment of the special term (64 N. Y. Supp. 460) dismissing the complaint, plaintiff appeals. Reversed.

Argued before GOODRICH, P. J., and WOODWARD, HIRSCHBERG, JENKS, and SEWELL, JJ.

Joseph S. Wood, for appellant.
G. C. Appell, for respondent.

WOODWARD, J. This is an action, addressed to the equitable jurisdiction of the court, to compel the removal of so much of the defendant's building as is alleged to extend over and upon the street or highway in the city of Mt. Vernon known as "West First Street," and for an injunction restraining the defendant from occupying such part of the building, and for damages. The learned court at special term found in favor of the defendant, and from the judgment entered an appeal comes to this court.

Both parties concede that the plaintiff cannot succeed in this action unless he proves that a portion of defendant's store is built upon the public highway,—a limitation upon the equitable powers of this court which we do not acknowledge; for it is the province of equity to reach all wrongs committed upon the rights of others for which actions at law afford an inadequate remedy. Taking the most favorable view of the question in support of the judgment (some of the matters not appearing of record), it may be said that in the year 1850 the Home Industrial Association, No. 1, of New York City, a nonincorporated body of about 1,000 members, made up a general fund, with which they purchased 375 acres of land, being a portion of the present city of Mt. Vernon. One John Stevens was elected president and purchasing agent of this association, and on their behalf took the title to the land purchased. On the 18th day of April, 1851, a map of the land, platted for a village, made by a surveyor, was presented to the association, and afterwards approved; and on the 22d day of December, 1851 (not June 7th, as erroneously stated in the decision of the court below), this map was filed in the office of the clerk of the county of Westchester. Upon this map all streets were laid out 60 feet in width. On the 26th day of September, 1851, before there had been any deeds of the property granted, though it may be assumed from what subsequently took place that there had been an agreement to distribute the lots indicated upon the plat among the members of the association, a resolution was passed, but which was nowhere publicly recorded, "that each member be privileged to set his fence five feet on the sidewalk, still leaving the sidewalk ten feet clear." On the 1st day of November, 1851, Mr. Stevens conveyed to the individual members of the association the 1,000 lots into which the land was divided, as laid down on said map, without making any mention of the resolution of the association in the deeds

of conveyance, but bounding and describing the premises by the streets, numbers, and dimensions set forth in the map, which map, as stated above, was filed with the county clerk of Westchester county on the 22d day of December, 1851, with nothing to indicate that it was in any manner modified. If we concede to this unrecorded resolution, adopted before the deeds were delivered, all the force and effect that its language admits, it did not operate to change the map or to reduce the width of the streets indicated. It was a privilege to each member to set his fence, not upon a new street line, but "five feet on the sidewalk, still leaving the sidewalk ten feet clear." This recognized the width of the street as indicated by the map, for, if the width of the street was to be reduced, the fence could not be placed "five feet on the sidewalk, still leaving the sidewalk ten feet clear"; and the resolution, instead of affording evidence of an intention to withdraw the tender of the streets for the use of the public, is evidence that the equitable owners of the premises recognized as existing a street 60 feet in width, 5 feet on either side of which might be reserved for the purpose of beautifying the same by the erection of fences "five feet on the sidewalk." The fence to be erected was not an indication of the boundary of the street. It was clearly stated that the fence was to be "five feet on the sidewalk." And the setting apart of a portion of the highway for the purpose of affording ample space for the access of light and air, and also to beautify and adorn, is not without judicial sanction. In re Curran, 38 App. Div. 82, 55 N. Y. Supp. 1018. In this case the court say:

"A street may in part unite the two purposes,—one to furnish a way for travel, and the other as a park or public place. These elements have frequently been united, and there is scarcely a city in the state where roads, boulevards, and avenues have not been opened for the purpose of travel; and, in connection with such use, lands have been acquired for the sole purpose of furnishing ample space, in order that the enjoyment of the street itself by the inhabitants of a municipality may thereby be enhanced."

The legislature of this state likewise recognizes the rule that it is not necessary that all parts of a highway shall be used for travel, for the mere necessities of the community; for by the provisions of chapter 257 of the Laws of 1899 it was enacted that Clinton avenue, in the borough of Brooklyn, should be widened by a strip of land 20 feet wide on either side of the traveled way, and it specially provided that this additional strip of land should be fenced in and used only for the purpose of beautifying the street, except as a means of ingress and egress from the houses along such highway. And this court, in Re City of New York (not yet officially reported) 68 N. Y. Supp. 196, held that this was within the power of the legislature; citing In re Bushwick Ave., 48 Barb. 9, where it was held that "the taking of twenty feet on each side of the avenue, and the appropriation of the same as courtyards only, is such a taking as will justify an appraisement of damages therefor." It seems entirely plain to us that the most that can be claimed for this resolution is that it may have superimposed a private easement upon that which had already been set apart for the public, or, in other words, that the street remained just as it was shown upon the map, subject to the

privilege of the abutting owners, not to construct houses or business places "five feet on the sidewalk," but to construct their fences five feet over into the highway, for the purpose of affording courtyards, and ample space for the access of light and air, and to beautify and adorn the same.  It should be remembered that the map with reference to which all of the deeds were made, although in existence and approved by the association, was not filed until the 22d day of December, nearly two months after the deeds were executed and delivered, and that neither the deeds nor the maps make any reference to a change in the width of the highways, while the resolution itself recognizes the width of the highways as fixed by the map, by providing that the owners of the lands abutting on the highway shall be permitted to construct their fences "five feet on the sidewalk," which constituted a part of the street set aside in the map.  It may therefore be conceded, in the language of the court below, that "it is substantially proven that the lot owners, without exception, availed themselves of the provision or privilege of fencing in the five feet in front of their lots, in accordance with their resolution," and that "the public authorities have never at any time entered upon, worked, used, or assumed control of the strip in question."  Yet we are not in a position to conclude that the plaintiff has failed to establish a cause of action.  While matters were in the condition above indicated, and while the owners of these lots had, if you please, availed themselves of the privilege mentioned in the resolution, the legislature of this state, by the provisions of section 7 of chapter 114 of the Laws of 1854, enacted that "the said village of Mount Vernon shall be and is hereby constituted a separate road district, and all the streets and avenues in said village shall be considered public highways of the width of sixty feet."  This, the plaintiff contends, is conclusive as an acceptance of the streets as laid down on the original map; and the learned trial court concedes that "it would undoubtedly have that effect, unless there had been an effective revocation of the dedication before the act was passed," but holds that, as it is "well settled by authority that the legislative act can have no greater effect than to accept what has been relinquished by the private owner for public purposes,  *  *  *  the tender or inchoate dedication by the association had been effectively revoked before the passage of the legislative act," and that for that reason the plaintiff had failed to make out a cause of action.  In this we are of opinion that the court is in error; for, giving to the resolution a force and effect entirely beyond any limits which would be recognized in reference to a transfer of real estate under ordinary circumstances (for it can hardly be held that an unrecorded resolution adopted by a voluntary association not shown by the records to have had any relation to the property would operate to detract from or to add to the rights of parties holding under deeds), there was no revocation of the dedication, but an express recognition of its existence, subject at most to a superimposed private easement, and the legislature, under all of the authorities, might have accepted these highways 60 feet in width, subject to this private easement; and for the purposes of this appeal it may be assumed that such a private easement existed,

and that the legislature accepted these highways 60 feet in width, subject to the right of abutting owners to make use of "five feet upon the sidewalk" for the purposes of a courtyard. The plaintiff does not complain of this. What he does complain of is that the defendant, who traces her title to the original grantor in common with the plaintiff, has erected a store upon her lot, extending it "five feet on the sidewalk," and in such a manner as to specially damage the plaintiff's property, by shutting it off in one direction from all view of First street. In other words, the plaintiff, mindful of his own and the rights of others, has constructed a store with the front line upon the line of the street as indicated by the map to which all of the parties refer in their deeds, while the defendant has constructed her building overlapping that of the plaintiff by about five feet, with the result that persons approaching from the direction of the defendant's place are unable to see the plaintiff's store until nearly in front of it, and, as he alleges, greatly to his disadvantage, in that he is unable to rent the same to advantage. So long as the defendant merely placed a fence "five feet on the sidewalk," which was the limit of the right or privilege mentioned in the resolution, the plaintiff suffered no special damage; but, when this privilege was extended to the construction of an overshadowing building, it infringed the rights which were secured him by his deed, which bounded his premises, in common with 1,000 others, upon the highways laid out upon the map on file, and to which the deeds referred. Whether we view Mr. Stevens as the original grantor, his deeds referring to the map establishing the streets as between his grantees (Haight v. Littlefield, 147 N. Y. 338, 341, 342, 41 N. E. 696), or whether we look behind the records, and see the Home Industrial Association conveying these premises to individual members, subject to the mutual covenants implied from the map to maintain the streets as shown in the plat, we are of opinion, independently of the act of the legislature, that, as between the parties to this action, First street, in the city of Mt. Vernon, is a public highway to the full width shown upon the map, with a possible right in the defendant to erect a fence "five feet upon the sidewalk," which shall not interfere with the rights of the plaintiff. In re Adams, 141 N. Y. 297, 300, 36 N. E. 318. But beyond this the defendant may not go, without being answerable to the plaintiff for any damages which he may sustain. It is not necessary, however, to decide this point, as we have already reached the conclusion that the street is a public highway to its full width by virtue of the dedication of the original grantor or grantors, and the acceptance of the legislature in 1854, subject, it may be, to a private easement limited by the language of the resolution adopted by the Home Industrial Association.

The judgment appealed from should be reversed, and a new trial granted; costs to abide the final award of costs. All concur.